```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                  :
OMAR MINUS,                                       :
                                                  :
                                                  :
                        Plaintiff,                :
                                                  :        17-CV-4623 (JMF)
              -v-                                 :
                                                  :        OPINION AND ORDER
SERGEANT BRIDGET SPILLANE, SHIELD NO. 880;        :
OFFICER BRIAN BENVENUTO, SHIELD NO. 23866;        :
OFFICER JOSEPH TENNARIELLO, SHIELD NO.            :
12821,                                            :
                                                  :
                        Defendants.               :
                                                  :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

    Plaintiff Oscar Minus, proceeding without counsel, brings suit against several officers from the New York City Police Department ("NYPD") relating to an April 29, 2015 traffic stop and subsequent arrest. *See* ECF No. 47 ("SAC"), at 4-6; ECF No. 54 ("Answer"), ¶¶ 6, 8. Minus's pleadings do not list specific causes of action, but — very liberally construed — they can be read to bring claims, under federal law, for false arrest, malicious prosecution, unlawful search of his vehicle, and an unlawful strip search; and, under state law, for false arrest, malicious prosecution, and assault. Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. *See* ECF No. 71-15 ("Mem."). For the reasons that follow, their motion is granted in part and denied in part, and all but one of Minus's claims — his unlawful strip search claim — are dismissed.

## BACKGROUND

    In accordance with their obligations under this Court's Local Rules, Defendants served Minus with a Local Civil Rule 56.2 notice advising him "of the nature of a Rule 56 motion and

his burden in responding to it." *Rapillo v. CitiMortgage, Inc.*, No. 15-CV-5976 (KAM) (RML), 2018 WL 1175127, at *5 (E.D.N.Y. Mar. 5, 2018) (citation omitted). Among other things, the notice cautioned Minus that his failure to respond to Defendants' motion "with affidavits or documentary evidence contradicting the material facts asserted by" Defendants could result in dismissal of his claims and a judgment in Defendants' favor, *cf. Vital v. Interfaith Med. Ctr.*, 168 F.3d 615 (2d Cir. 1999), and referenced his need to comply with "Local Civil Rule 56.1," which requires a party opposing summary judgment to respond to Defendants' statement of undisputed material facts, *see* ECF No. 71-16 ("56.2 Notice"); *see generally* Local Civil Rule 56.1. Nevertheless, Minus's sole submission in opposition to Defendants' motion was a two-page document commenting on each of the exhibits submitted in support of Defendants' motion. *See* ECF No. 73 ("Opp'n"). Accordingly, and because Minus fails to "specifically controvert[]" any of the facts set forth in Defendants' statement of undisputed material facts, *see* ECF No. 71-14 ("56.1 Statement"), those facts are deemed admitted, *see* Local Civil Rule 56.1(c).

The undisputed evidence shows that, "at approximately 1:50 A.M." on April 29, 2015, Minus "was operating a motor vehicle on a public highway in violation of the restrictions applicable to [his] restricted use driver license." 56.1 Statement ¶¶ 3-4. Specifically, after observing that Minus was driving "without [his] headlights on," ECF No. 71-3, at D000001, Defendant Sergeant Bridget Spillane stopped Minus's car, observed his restricted license, and arrested him, *see* 56.1 Statement ¶¶ 3-5. Minus's vehicle was searched, and Minus — who was a "known drug dealer," ECF No. 71-4, at D000018 — was taken to a police station *see* 56.1 Statement ¶¶ 6-7. There, at the direction of Lieutenant Ian Rule, Defendant NYPD officers Brian Benvenuto and Joseph Tennariello strip-searched Minus before placing him into a holding cell with other prisoners. *See* 56.1 Statement ¶¶ 6-7, 11-13. His vehicle was taken into custody

2

and "vouchered for safekeeping in [relation] to [the] arrest." ECF No. 71-7, at D000031; *see also* ECF No. 71-4, at D000018 (indicating that an "inventory search of [Minus's] vehicle" followed the strip search). Later that day, Minus was arraigned on one count of "License Restriction Violation" and released. 56.1 Statement ¶ 14. The charge was dismissed approximately ten months later. *Id.*

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought,"

3

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). To defeat a motion for summary judgment, however, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Affidavits submitted in support of, or opposition to, summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

Finally, it is well established that courts must give "special solicitude" to *pro se* litigants in connection with motions for summary judgment. *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Thus, a *pro se* party's papers opposing summary judgment are to be read liberally and interpreted to "raise the strongest arguments that they suggest." *See, e.g.*, *Clinton v. Oppenheimer & Co.*, 824 F. Supp. 2d 476, 481 (S.D.N.Y. 2011). This special solicitude is not unlimited, however, and does not "relieve" a plaintiff of his or her "duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation mark omitted). Nor is the "duty to liberally construe a plaintiff's [opposition] . . . the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34[1][b], at 12-61) (internal quotation marks omitted).

**DISCUSSION**

Applying the foregoing standards here, the Court concludes that Defendants are entitled to judgment as a matter of law on all but one of Minus's claims. Put simply, Defendants demonstrate the absence of evidence to support an essential element for each of those claims. And in response, Minus submits no admissible evidence at all.

First, the undisputed evidence shows that Defendant Spillane arrested Minus only after observing that he "was operating a motor vehicle on a public highway in violation of the restrictions applicable to [his] restricted use driver license." 56.1 Statement ¶ 3. Based on that record, no reasonable jury could conclude that Defendant Spillane lacked probable cause to arrest him, at a minimum, for violation of New York's Vehicle and Traffic Law § 509(3), which prohibits persons from "operat[ing] any motor vehicle in violation of any restriction contained on, or applicable to, the permit or license." That is fatal to Minus's false arrest and malicious prosecution claims. *See, e.g.*, *Jenkins v. City of New York,* 478 F.3d 76, 84 (2d Cir. 2007) (reaffirming that both state and federal false arrest claims require, among other things, a showing "that the [challenged] arrest was not privileged, [that is], not based on probable cause" (citation omitted)); *e.g., Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (noting that a plaintiff must prove that "the defendant lacked probable cause to believe the proceeding could succeed" in order to sustain a claim of malicious prosecution under state or federal law).

Minus's unlawful vehicle search claim also fails. It is well established that "[w]hen a person is arrested in a place other than his home, the arresting officers may impound the personal effects that are with him at the time to ensure the safety of those effects or to remove nuisances from the area." *United States v. Perea*, 986 F.2d 633, 643 (2d Cir. 1993) (internal quotation marks omitted). "After such an arrest and seizure, an inventory search of the property seized is

justified by the government's interests in averting any danger the property might pose, in protecting the property from unauthorized interference, and in protecting itself against claims of theft or negligent treatment of the property." *Id.* at 644. Such a search "is lawful as long as it is conducted in good faith pursuant to standardized criteria . . . or established routine." *Othman v. City of New York*, No. 13-CV-4771 (NGG) (SJB), 2018 WL 1701930, at *15 (E.D.N.Y. Mar. 31, 2018) (quoting *United States v. Thompson*, 29 F.3d 62, 65 (2d Cir. 1994) (internal quotation marks omitted)). Procedure No. 218-13 of the NYPD Patrol Guide — of which the Court can and does take judicial notice, *see Williams v. City of New York*, 121 F. Supp. 3d 354, 369 n.16 (S.D.N.Y. 2015) — provides standardized criteria for the search of seized vehicles, *see, e.g.*, *United States v. Cancel*, 167 F. Supp. 3d 584, 596 n.9 (S.D.N.Y. 2016), and Minus points to no evidence that the search of his car violated those procedures. Where, as here, there is "no showing that the police," who may have been "following standardized procedures, acted in bad faith or for the sole purpose of investigation," no reasonable jury could find that Minus's vehicle was *not* the proper subject of an inventory search. *Colorado v. Bertine*, 479 U.S. 367, 372 (1987). Accordingly, the claim must be and is dismissed.

Next, Minus's state law assault claim fails as a matter of law because he did not submit a timely notice of claim as required under state law or file his claim with the statute of limitations period. Section 50-i of New York's General Municipal Law, which governs state law tort claims "against municipalities [and their] officers, agents or employees whose conduct caused the alleged injury," provides by reference to Section 50-e that a "plaintiff must file a notice of claim prior to commencement of an action against a municipality, and must serve the notice of claim within 90 days after the claim arises," even if he brings the claim in the context of "a federal civil rights action." *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 174–45 (S.D.N.Y.

6

2003) (internal quotation marks omitted).  In addition, "the applicable statute of limitations period under [Section 50-i(1)(c) for such actions] is one year and ninety days after the happening of the event on which the claim is based."  *Id*. at 175.  This action was initially brought on June 19, 2017, *see* ECF No. 1 — more than *two years* after Minus's April 29, 2015 arrest, *see, e.g.*, *Warner*, 256 F. Supp. 2d. at 175 (noting that plaintiff filed his action two and a half years after his encounter with the police).  Because there is *no* evidence that Minus filed a timely notice of claim as to an assault claim, no evidence that he has any valid defense to his failure to timely notice, and no evidence that he sought permission to file "a late notice of claim . . . [from] an appropriate state supreme court or county court," Minus "fails to raise a genuine issue of material fact as to why his state law claims should not be dismissed for failure to comply with the notice of claim provision . . . and the statute of limitations provision."  *Id*.

And finally, to the extent that Minus's submissions to the Court could be construed to raise several claims that are not evident in his Complaint — including a "denial of fair trial" claim, a perjury claim, an unlawful stop claim, and a *Miranda* claim, *see, e.g.*, ECF No. 58 (letter submitted in advance of the initial pretrial conference asserting claims against Defendant Spillane for "writ[ing] a[] false instrument, and [p]erjury"); Mem. 10 (interpreting such statements to raise a "denial of fair trial" claim); Opp'n ¶¶ 2, 8 (asserting that Defendants "failed to show" reasons that Minus was "pulled over" or that he had voluntarily waived his *Miranda* rights); ECF No. 74, at 10 (interpreting such statements to raise new "unlawful stop and purported *Miranda* claims") — these claims do not survive.  For one thing, the Court could disregard these claims.  *See, e.g.*, *Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009) (noting that district courts are "free to disregard argument raised for the first time in reply papers, especially on a motion for summary judgment"), *aff'd*, 374 F.

App'x 71 (2d Cir. 2010). For another, they too fail as a matter of law. First, the right to a fair trial violation claim based on purportedly fabricated evidence fails because there are no facts to support a finding that Defendant Spillane's statements, written or otherwise, were false. *See, e.g.*, *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (noting the relevant inquiry is whether "a reasonable jury could find, based on the evidence, that defendants . . . conspir[ed] to fabricate and forward to prosecutors a known *false* confession" (emphasis added)). Second, the perjury claim fails because "there is no private right of action for perjury under New York law." *Carvel v. Ross*, No. 09-CV-0722 (LAK) (JCF), 2011 WL 856283, at *11 (S.D.N.Y. Feb. 16, 2011) (internal quotation marks and citation omitted), *report and recommendation adopted*, No. 09-CV-0722 (LAK), 2011 WL 867568 (S.D.N.Y. Mar. 11, 2011). Third, the unlawful stop claim fails because the undisputed evidence shows that Minus was driving on a public highway at nighttime without his headlights on, in violation of state law. *See* N.Y. Veh. & Traf. Law § 375(2)(a)(1). And finally, the *Miranda* claim fails because there is no evidence suggesting that any allegedly "coerced statement [was] used against" Minus. *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) (holding that an officer's "failure to inform plaintiffs of their [*Miranda*] rights . . . does not, without more, result in § 1983 liability" because "warnings are only a procedural safeguard designed to protect a person's right against self-incrimination" (citing *New York v. Quarles*, 467 U.S. 649, 654 (1984)).

By contrast, Minus's unlawful strip search claim cannot be dismissed on the current record. Citing *Hartline v. Gallo*, 546 F.3d 95 (2d Cir. 2008), which held that the police cannot conduct a strip search of a misdemeanor arrestee at a police station absent individualized reasonable suspicion that the arrestee might be concealing a weapon or contraband, Defendants argue first that Officers Benvenuto and Tennariello had such an individualized reasonable

suspicion. *See* Mem. 16-18. At bottom, however, the sole proffered basis for that suspicion appears to be that Minus was "known" by Lieutenant Rule to be a "drug dealer." *Id.* at 18.[1] But Defendants cite, and the Court has found, no authority suggesting that a strip search would be justified under *Hartline* based on that meager a showing. *Cf. Hartline*, 546 F.3d at 101-02 (holding that arrest for a misdemeanor drug offense, by itself, does not satisfy the reasonable suspicion requirement); *Ellsworth v. Wachtel*, 11-CV-0381 (LEK) (CFH), 2013 WL 140342, at *5-7 (N.D.N.Y. 2013) (holding that individualized reasonable suspicion did not exist where the plaintiff had been arrested on a misdemeanor drug offense and was in the presence of narcotics at the time of her arrest); *Sims v. Farrelly*, 10-CV-4765 (ER), 2013 WL 3972460, at *8 (S.D.N.Y. 2013) (holding, in the felony arrest context, that individualized reasonable suspicion was absent where a strip search was conducted due "generally to the narcotics nature of the incident, the easy concealability of crack cocaine, and the criminal history of many of the subjects" (internal quotation marks and citation omitted)). In the alternative, Defendants argue that Officers Benvenuto and Tennariello are entitled to qualified immunity because, following *Florence v. Board of Chosen Freeholders of County of Burlington*, 566 U.S. 318 (2012), district courts in

---

[1] Defendants also cite that Minus was on bail pending trial for a drug offense at the time, was driving late at night and failed to provide any means of verifying his claim that he was coming from work, and had an "extensive" history of drug convictions. Mem. 17. It is doubtful that these facts, even taken together, "could have led a reasonable officer in [Officers Benvenuto's and Tennariello's] position to suspect that [Minus] was illicitly concealing drugs on [his] person." *Hartline*, 546 F.3d at 101. And in any event, Defendants point to no evidence in the record that Officers Benvenuto and Tennariello were aware of these facts at the time that they conducted the strip search. *See, e.g.*, *Phaneuf v. Fraikin*, 448 F.3d 591, 597 (2d Cir. 2006) (holding that, in reviewing the propriety of a search, a court may consider "only those facts known to [the law enforcement officials] *prior* to the search" (citing cases)).

9

this Circuit have disagreed with respect to whether individualized reasonable suspicion is required to justify a strip search at a police station. But Defendants arguably overstate the degree to which the law is unsettled. *See, e.g.*, *Fate v. Charles*, 24 F. Supp. 3d 337, 344-52 (S.D.N.Y. 2014). And, in any event, even if *Florence* could be read to apply in the police station setting, it would be of no help to Officers Benvenuto and Tennariello on the present record as there is no evidence that they conducted the search pursuant to a general policy of conducting strip searches before putting misdemeanor arrestees in a holding cell with other prisoners. *See, e.g.*, *id.* at 351-52 (explaining that *Florence* does not apply to *discretionary* strip searches).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part, and all of Minus's claims — except his unlawful strip search claim against Officers Benvenuto and Tennariello — are DISMISSED in their entirety.

In particular, Plaintiff's claim for unlawful search of his person may proceed. In light of the the need for trial to resolve that claim, the Court exercises its discretion under Title 28, United States Code, Section 1915(e)(1), and will seek to obtain pro bono counsel for Plaintiff. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989). Further, the Court believes — in light of this ruling, the possibility that Plaintiff will obtain counsel in short order, and the likelihood that any damages on the unlawful search claim would likely be small — that the parties should attempt to settle the case without the need for trial. To that end, by separate Order to be entered today, the Court is referring the case to the assigned Magistrate Judge (the Honorable Debra C. Freeman) for settlement purposes. **No later than the earlier of one week after pro bono counsel enters a notice of appearance or January 10, 2020**, the parties shall contact the Chambers of Magistrate Judge Freeman to schedule a settlement conference as soon

as possible. In the event that the case does not settle, the Court will issue a further Order with respect to the timing and procedures leading up to trial.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Memorandum Opinion and Order would not be taken in good faith and, thus, *in forma pauperis* status is denied. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to mail a copy of this Memorandum Opinion and Order to Minus, to terminate ECF No. 71, and to terminate Spillane as a Defendant.

SO ORDERED.

Dated: December 3, 2019
      New York, New York

                                            JESSE M. FURMAN
                                      United States District Judge