UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

OMAR MINUS,

                                        Plaintiff,

                    -against-

BRIAN BENVENUTO and JOSEPH TENNARIELLO,

                                        Defendants.


------------------------------------------------------------------------ x

**DEFENDANTS'
MEMORANDUM OF LAW
IN SUPPORT OF THEIR
MOTION FOR SUMMARY
JUDGMENT ON QUALIFIED
IMMUNITY**

1:17-cv-04623-JMF

Defendants Brian Benvenuto ("Benvenuto") and Joseph Tennariello ("Tennariello"), by their attorney, James E. Johnson, Corporation Counsel of the City of New York, respectfully submit this Memorandum of Law in support of their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Omar Minus brings this *pro se* action pursuant to 42 U.S.C. § 1983 alleging multiple violations of his federal civil rights. Discovery closed on May 16, 2019, and defendants filed a fully dispositive motion for summary judgment on June 13, 2019. *See* Docket Nos. 61 and 71. The plaintiff filed his opposition to the defendants' motion on June 13, 2019, and defendants replied on June 27, 2019. *See* Docket Nos. 73-74. On December 3, 2019, the Court issued an Opinion and Order granting judgment to defendants on all of plaintiff's claims except for his unlawful strip search claim. *See* Docket No. 76.[1]

On April 1, 2020, defendants filed a letter raising a theory of qualified immunity

---

[1] In its Opinion and Order, the Court dismissed all of plaintiff's claims against former defendant Bridget Spillane and terminated Bridget Spillane as a defendant in the case. *See* Docket No. 76.

that had not been explicitly briefed.  *See* Docket No. 86.  On April 3, 2020, the Court issued an Order concluding that "it is in the interests of justice to allow Defendants to file a new summary judgment motion limited to the question of qualified immunity."  Docket No. 87.  Defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56 on the grounds that defendants are entitled to qualified immunity on plaintiff's sole remaining unlawful strip search claim.

## STATEMENT OF FACTS

On April 29, 2015, at approximately 2:00 A.M., in the vicinity of 116 West Houston Street in the County and State of New York, Bridget Spillane lawfully arrested plaintiff for a non-felony violation of the Vehicle Traffic Law.  *See* Defendants' Statement Pursuant to Local Rule 56.1 ("56.1 Stmt.") at ¶ 1.  After his arrest, the plaintiff was transported to the 6th Precinct of the New York City Police Department.  *Id.* at ¶ 2.  Shortly after plaintiff arrived at the 6th Precinct, Lieutenant Ian Rule[2] directed New York City Police Officers, including defendants Brian Benvenuto and Joseph Tennariello, to conduct a strip search of the plaintiff.  *Id.* at ¶¶ 3.  Defendants Brian Benvenuto and Joseph Tennariello then conducted the strip search of the plaintiff pursuant to Lieutenant Ian Rule's facially lawful direction on or about April 29, 2015.  *Id.* at ¶ 4.

For a full recitation of the material facts as to which defendants contend there are no genuine dispute, defendants respectfully refer the Court to their Local Rule 56.1 statement.

## STANDARD OF LAW

Summary judgment is warranted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v.*

---

[2] Lieutenant Ian Rule was disclosed to plaintiff as a potential witness in defendants' January 19, 2019 Initial Disclosures.  Furthermore, the plaintiff clearly testified at his deposition that a "uniformed lieutenant" ordered his strip search.  Minus Dep. at 57:16-24, Leese Decl., Ex. A.  However, the plaintiff has never sought to either depose Lieutenant Rule or amend his complaint to add Lieutenant Rule as a defendant.

*Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (the Court determines whether "there are any genuine factual issues that properly can be resolved only by a finder of fact").

   In opposing summary judgment, the non-moving party may not rely solely on "conclusory allegations or denials" as these "cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted). The party bearing the burden of proof has no right to take the case to trial if a favorable verdict could only be the product of surmise, speculation, and conjecture. *See, e.g., Calvert v. Katy Taxi, Inc.,* 413 F.2d 841, 844 (2d Cir. 1969). The non-moving party must produce evidence to support his case and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

   A plaintiff has the burden to present admissible evidence which would tend to show that there is a genuine issue of fact with respect to their claims for trial. *See e.g., Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (when the nonmoving party bears burden of proof at trial, the moving party is entitled to summary judgment if non-movant fails to make a showing on essential element of its claim). Moreover, the party "asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including deposition, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). Although "the *pro se* litigant should be given special latitude in responding to a summary judgment motion," the same standards apply. *Smith v. Keane*, 96 Civ. 1629 (JGK), 1998 WL 146225,

1998 U.S. Dist. LEXIS 3702 at *8 (S.D.N.Y. Mar. 25, 1998) (citations omitted).

## ARGUMENT

Summary judgment should be granted in favor of defendants on plaintiff's strip search claim because Benvenuto and Tennariello participated in strip searching the plaintiff pursuant to the facially lawful order of their superior officer, Lietuenant Ian Rule.  There are no genuine issues of material fact which warrant a trial and, on this record, both Benvenuto and Tennariello are, at the very least, entitled to qualified immunity on plaintiff's sole remaining claim.

### A.    Warrantless Strip Search Standard

"The leading Second Circuit case on warrantless strip searches of arrestees at police stations analyzed those searches under the incident to arrest exception." *Sloley v. VanBramer*, 1:14-cv-339 (GLS/CFH), 2016 WL 6603211, 2016 U.S. Dist. LEXIS 154625 at *6-7 (N.D.N.Y. Nov. 8, 2016) (citing *Hartline v. Gallo*, 546 F.3d 95 (2d Cir. 2008)).  "The Fourth Amendment requires an individualized 'reasonable suspicion that [a misdemeanor] arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest' before she may be lawfully subjected to a strip search." *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008) (quoting *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986)).  "Whether a particular strip search is constitutional turns on an objective assessment of the . . . facts and circumstances confronting [the searching officer] at the time, and not on the officer's actual state of mind at the time of the search." *Id.* at 100 (quotation omitted).

### B.    The Qualified Immunity Standard

Defendants are entitled to immunity unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citations omitted).  As the Supreme Court recently stated, to be "clearly established" the law must "clearly prohibit the officer's

conduct in the particular circumstances before him" with a "high degree of specificity." *Id.* at 590. Additionally, qualified immunity will also shield officers from lawsuits where "it was ***objectively reasonable*** for the defendant to believe that his action did not violate [clearly established] law." *Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir. 2015) (citation omitted) (emphasis added).

### i. The scope of qualified immunity is broad.

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Moreover, police officers "will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law." *Butz v. Economou*, 438 U.S. 478, 507 (1978). Officers are "not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Coollick v. Hughes*, 699 F.3d 211, 221 (2d Cir. 2012) (citations omitted).

### ii. Officers are entitled to qualified immunity if the law is not "clearly established."

Qualified immunity shields police officers from suit where there is no clearly established law addressing the specific, challenged conduct. "Cleary established" law means that "at the time of the officer's conduct, the law was sufficiently clear that *every* reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (emphasis added) (internal citations and quotations omitted). "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Id.*

For the law to be clearly established, the "legal principle must have a sufficiently clear foundation in then-existing precedent." *Id.* "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that ***every reasonable official*** would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* (emphasis added).

Whether a law was "clearly established" is itself an issue of law, s*ee Elder v.*

*Holloway*, 510 U.S. 510, 516 (1994), that is a highly-specific question tailored to the facts of a particular case, not a general abstract inquiry. *See Wesby,* 138 S. Ct. at 590; *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (reiterating "the longstanding principle that clearly established law should not be defined at a high level of generality"). An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quotation and citation omitted). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004); *see Pabon v. Wright*, 459 F.3d 241, 255 (2d Cir. 2006) (holdings of sister circuits and district courts are not relevant).

### iii. Officers are entitled to qualified immunity if their conduct is objectively reasonable.

"Where the right at issue in the circumstances confronting police officers was clearly established but was violated, the officer will still be entitled to qualified immunity if it was ***objectively reasonable*** for him to believe that his acts did not violate these rights." *Outlaw v. City of Hartford*, 884 f.3d 351, 367 (2d Cir. 2018) (emphasis added). "[T]he qualified immunity standard is an objective standard, asking not whether the defendant officer acted in good faith or what he himself knew or believed, but rather what would have been known to or believed by a ***reasonable officer in the defendant's position***." *Id.* (emphasis added). Indeed, the proper question is "whether ***any*** reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, ***could have*** determined that the challenged action was lawful." *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (citations omitted) (emphasis original).

### iv. Qualified immunity must be analyzed from the perspective of the individual officer.

Qualified immunity is analyzed from the perspective of the defendants. The Court

should "consider[] only the facts that were knowable to the defendant officers." *White*, 137 S. Ct. at 550. Thus, it is the police officers' point of view, state of mind, and reasonable beliefs—not the plaintiff's—that are integral in a qualified immunity determination. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (the perspective is that of "a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight"). A qualified immunity determination "is made not from the perspective of the courts or lawyers, but from that of a reasonable officer in the defendants' position." *Mitchell v. City of New York,* 749 F. Appx. 75, (2d Cir. 2019) (summary order) (quoting *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017)).

## C.    Benvenuto And Tennariello Are Entitled To Qualified Immunity

The defendants are entitled to summary judgment on plaintiff's unlawful strip search claim because the defendants strip searched the plaintiff—who was present in the precinct after a lawful arrest—pursuant to the facially lawful direction of a superior officer.

In the context of evaluating a wrongful strip search claim, the Second Circuit has noted that there are "many permutations of fact that bear upon the constitutional issues of a search" and "the policeman is not expected to know all of our precedents or those of the Supreme Court." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 161-62 (2d Cir. Aug. 28, 2013). Where the legality of a law enforcement procedure turns on such a fact-specific, legally complex, analysis, it is perfectly reasonable for police officers to rely on the direction of a superior officer. *Cf. Varrone v. Bilotti*, 123 F.3d 75, 82 (2d Cir. 1997) ("Realistically, [subordinate] officers had no choice but to carry out the order they received [to strip search plaintiff], which was facially valid."); *Golphin v. City of New York*, No. 09 Civ. 1015 (BSJ), 2011 WL 4375679, 2011 U.S. Dist. LEXIS 106272, at *8 (S.D.N.Y. Sept. 20, 2011) ("Even if [superior officers] failed to convey every piece of information known, [an inferior officer] was entitled to rely on the word of both superiors and make the arrest."); *Burns v. Loranger*, 907 F.2d 233, 236 n. 7 (1st Cir. 1990) (imputing knowledge

of superior officer to an inferior officer summoned to residence in order to conduct a strip search).

Furthermore, the "Second Circuit has recognized that it can be reasonable for an officer to engage in conduct *that later is found unconstitutional* when that officer acted under the direction of supervisors." *Zieper v. Metzinger*, 392 F. Supp. 2d 516, 537 (S.D.N.Y. 2005) (emphasis added) (discussing cases). "*Plausible* instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they *could* lead a reasonable officer to conclude that *the necessary legal justification for his actions exists (e.g. a warrant, probable cause, exigent circumstances)*." *Anthony v. City of New York*, 339 F.3d 129, 138 (2d Cir. 2003) (quoting *Bilida v. McCleod*, 211 F.3d 166, 174-75 (1st Cir. 2000)) (emphasis added); *see also Lauro v. Charles*, 219 F.3d 202, 216 n. 10 (2d Cir. 2000) (existence of qualified immunity "further supported" by fact that officer was following orders of superior when he took criminal defendant on unconstitutional "perp walk"); *cf. Varrone*, 123 F.3d at 81 (subordinate correction officers who carried out "the apparently valid order" of a superior officer to conduct a strip search were entitled "to have the same qualified immunity" as their superior). Stated simply, law enforcement officers are "entitled to rely on the reasonable instruction of their superior in the chain of command, particularly where those instructions [are] not inconsistent with their personal knowledge and experience." *Washington Square Post #1212 American Legion v. Maduro*, 907 F.2d 1288, 1293 (2d Cir. 1990) (in a *Bivens* action).

In this instance, Benvenuto and Tennariello strip searched the plaintiff—who had been lawfully arrested and was present in the 6th Precinct House—only after they were directed to by their superior, Lieutenant Rule. 56.1 Stmt. at ¶¶ 1-4. There is no evidence in the record that would have given a reasonable officer in the defendants' position any credible, objective reason to doubt the facially lawful direction of their superior officer. More pointedly, there is no evidence

in the record to suggest that the defendants were ***even aware*** of the basis for Lieutenant Rule's command.  Unknown to the defendants, Lieutenant Rule could have known of or observed any number of "facts or circumstances" to support—or arguably support—a strip search.  *Hartline*, 546 F.3d at 100.  But, by the plaintiff's own description of events, the only communication that allegedly occurred between Lieutenant Rule and the defendants regarding the strip search was the order to conduct the strip search itself and defendants' acknowledgement.  Minus Dep. at 63:12-17, 65:22-23, Leese Decl., Ex. A.  Nor were defendants required—or realistically in a position—to make an "independent determination" as to the legal basis for Lieutenant Rule's decision. *See Golphin*, 2011 U.S. Dist. LEXIS 106272 at *8 ("If an [inferior officer] could be held liable for trusting the word of his superiors, then officers would be discouraged from relying on each other during investigations, which would degrade the efficiency of law enforcement."); *Varrone*, 123 F.3d at 82 (subordinate officers "realistically" have no choice but to carry out facially valid orders).  On this record, the defendants reasonably concluded that the necessary legal justification for the strip search existed, s*ee Anthony*, 339 F.3d at 138, and are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, defendants Benvenuto and Tennariello respectfully request that the Court grant their motion for summary judgment on the issue of qualified immunity in its entirety, with prejudice, together with costs and fees the Court deems just and proper.

Dated: New York, New York
      April 16, 2020

                                      JAMES E. JOHNSON
                                      Corporation Counsel of the City of New York
                                      *Attorney for Defendants*

                                      By:    _/s/ Nelson R. Leese_____
                                             Nelson R. Leese, *Senior Counsel*

To:      Omar Minus (*by Email*)
          *Plaintiff Pro Se*
          Email: comandor3@yahoo.com