**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**


OMAR MINUS,

       *Plaintiff*,

                            Case No. 1:17-cv-04623-JMF

       v.

BRIAN BENVENUTO and JOSEPH
TENNARIELLO,

       *Defendants*.


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO MOTION**
**FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY**

# **TABLE OF CONTENTS**

Preliminary Statement ........................................................................................................ 1

Statement of Facts ............................................................................................................. 2

Legal Standard .................................................................................................................. 3

Argument ........................................................................................................................... 4

    I. The Fourth Amendment Requires Particularized Suspicion to Conduct a Strip Search of a Defendant Following a Traffic Arrest That Is Neither a Felony Nor a Misdemeanor ............... 4

    II. There Exists a Clearly Established Right to Be Free From Strip Searches Following a Non-Felony Arrest Where There Is No Reasonable Suspicion of the Arrestee Concealing Contraband ...................................................................................................................... 5

    III. Qualified Immunity Should Be Denied Where Defendants Were Ordered to Conduct an Unlawful Strip Search Pursuant to an Unlawful Order and with No Plausible Grounds for it to be Reasonable Under the Circumstances ................................................................................ 7

Conclusion ..................................................................................................................... 13

i

# <u>TABLE OF AUTHORITIES</u>

*Anthony v. New York*,
  339 F. 3d 129 (2d Cir. 2003) ........................................................................ 9, 10

*Cunningham v. N.Y. Dep't of Labor*,
  429 Fed. Appx. 17 (2d Cir. 2011) ............................................................... 3

*Desir v. New York*,
  453 Fed. Appx. 30 (2d Cir. 2011) ............................................................... 3

*Diamondstone v. Macaluso*,
  148 F.3d 113 (2d Cir. 1998) ...................................................................... 1, 7

*Dugas v. Jefferson County*,
  931 F. Supp. 1315 (E.D. Tex. 1996) ........................................................... 12

*Ellsworth v. Wachtel*,
  2013 WL 140342 (N.D.N.Y. 2013) ............................................................. 6-7

*Golphin v. New York*,
  2011 WL 4375679 (S.D.N.Y. 2011) ............................................................ 9

*Gonzalez v. Schenectady*,
  728 F. 3d 149 (2d Cir. 2019) ..................................................................... 5

*Guido v. Schenectady*,
  404 F.2d 728 (2d Cir. 1968) ...................................................................... 12

*Hartline v. Gallo*,
  546 F.3d 95 (2d Cir. 2008) ....................................................................... 1, 4-7

*Johnson v. Killian*,
  680 F.3d 234 (2d Cir. 2012) ...................................................................... 3

*Kerman v. New York*,
  261 F.3d 229 (2d Cir. 2001) ...................................................................... 3

*Killmon v. Miami*,
  199 F. App'x 796 (11th Cir. 2006) ............................................................. 11

*Lauro v. Charles*,
  219 F.3d 202 (2d Cir. 2003) ...................................................................... 9

*Little v. Barreme*,
  6 U.S. 170 (1804) ..................................................................................... 12

*Minus v. Benvenuto*,
   No. 17-cv-4623-JMF (S.D.N.Y., Dec. 3, 2019) .......................................................... 1, 4, 6, 7

*N.G. v. Connecticut*,
   382 F.3d 225 (2d Cir. 2004) ................................................................................................ 4-5

*Rivera v. United States*,
   928 F.2d 592 (2d. Cir. 1991) .................................................................................................. 4

*Sarnicola v. Westchester*,
   229 F. Supp. 2d 259 (S.D.N.Y. 2002) ................................................................................... 8

*Schmerber v. California*,
   384 U.S. 757 (1966) ................................................................................................................ 4

*Sims v. Farrelly*,
   2013 WL 3972460 (S.D.N.Y. 2013) ..................................................................................... 6

*Sorensen v. New York*,
   42 F. App'x 507 (2d Cir. 2002) .............................................................................................. 7

*Terry v. Ashcroft*,
   336 F.3d 128 (2d Cir. 2003) ................................................................................................... 4

*Thomas v. Roach*,
   165 F.3d 137 (2d Cir. 1999) ................................................................................................... 5

*Varrone v. Bilotti*,
   23 F.3d 75 (2d Cir. 1997) .................................................................................................. 9-10

*Zieper v. Metzinger*,
   392 F. Supp. 2d 516 (S.D.N.Y. 2005) ................................................................................... 9

**Law Review Articles**

Karen M. Blum, *Discretionary Function, Extraordinary Circumstances, and Other Nuances of the Qualified Immunity Doctrine Under Section 1983*,
   23 Touro L. Rev. 57 (2007) ................................................................................................. 12

## PRELIMINARY STATEMENT

Plaintiff Omar Minus, by his *pro bono* counsel, Carey Shenkman, respectfully submits this Memorandum of Law in response to Defendants' motion for summary judgment. This case arises because Mr. Minus was strip searched after an arrest, not for a felony, not even for a misdemeanor, but for *violation* of New York's Vehicle and Traffic Law § 509(3), during which *no contraband* was reportedly found at the time of arrest, or in Plaintiff's vehicle. Spillane Memobook, Leese Decl., Ex. C. This Court in its prior Opinion and Order already took pause at Defendant's "doubtful" and "meager" Fourth Amendment justification for a strip search under such circumstances. *Minus v. Benvenuto*, No. 17-cv-4623-JMF, at 9 (S.D.N.Y., Dec. 3, 2019) ("Defendants cite, and the Court has found, no authority suggesting that a strip search would be justified under *Hartline* based on that meager a showing."). Since then, Defendants present a different basis for justifying the search, that they were simply following orders. Pursuant to the Court's April 3 Order, the parties are briefing this separate issue in the interests of justice as well as timing issues created by the COVID-19 situation. *See* Docket No. 87.

"Acting under the advice or order of a superior does not *ipso facto* immunize officers from suit." *See Diamondstone v. Macaluso*, 148 F.3d 113, 126 (2d Cir. 1998) (denying qualified immunity to an officer who followed facially invalid orders from superiors which contradicted relevant court holdings). In the context of a misdemeanor arrest, the Second Circuit has consistently held that there must be individualized reasonable suspicion that the arrestee is concealing contraband to perform a strip search. *See Hartline v. Gallo*, 546 F.3d 95, 103 (2d Cir. 2008) (overturning a district court's grant of summary judgment on qualified immunity grounds, following a § 1983 claim arising from a strip search of an individual arrested for a misdemeanor drug offense following a traffic stop). In *Hartline*, the Second Circuit warned of the gravity of

1

strip searches for lesser offenses. "Ultimately, if the facts of this case amount to reasonable suspicion, then strip searches will become commonplace. Given the uniquely intrusive nature of strip searches, as well as the multitude of less invasive investigative techniques available to officers confronted by misdemeanor offenders, that result would be unacceptable in any society that takes privacy and bodily integrity seriously." *Id.* at 102.

Mr. Minus argues Defendants performed an illegal and unconstitutional strip search of him under circumstances that fall well-below thresholds that have already been deemed tenuous under Second Circuit standards, without an individualized reasonable suspicion that he was concealing contraband on his person. This determination does not change simply because the officers were following orders; Defendants searched Plaintiff's vehicle following his traffic arrest and no contraband was reported in the vehicle then or later. Minus Dep., 34:18-21, 89:22-24, 90:15-21, Shenkman Decl., Ex. A; Spillane Memobook, Leese Decl., Ex. C. They had no reason to believe that particularized suspicion for a strip search existed under the circumstances, and qualified immunity should be denied.

## STATEMENT OF FACTS

On April 29, 2015, at approximately 2:00 A.M., in the vicinity of 116 West Houston Street in the County and State of New York, plaintiff was arrested for a non-felony, non-misdemeanor violation of the Vehicle Traffic Law. *See* Plaintiff's Counterstatement Pursuant to Local Rule 56.1 at ¶ 1. Defendant Benvenuto and Tennariello were involved in conducting a search of Plaintiff's car following his arrest, and no contraband was reported found during Plaintiff's arrest or in his vehicle. *Id.* After his arrest Plaintiff was transported to the 6th Precinct of the New York City Police Department. *Id.* at ¶ 2. Defendants Benvenuto and Tennariello conducted a strip search of Plaintiff under the authority of Lieutenant Ian Rule on or about April

29, 2015. *Id.* at ¶ 4. Plaintiff verbally objected to the search on grounds of his non-felony

violation. *Id.* Plaintiff felt that Defendants made light of the gravity of the situation by smirking

at him. *Id.* Defendants and Lieutenant Rule made gestures at Plaintiff with closed fists in open

palms which made him feel threatened. *Id.* Defendants previously took the position, with respect

to summary judgment surrounding the strip search, that the strip search was motivated at least in

part by Lieutenant Rule's perception of Plaintiff as a "known drug dealer." *Id.*

    For a full recitation of the material facts as to which Plaintiff contends there are no

genuine dispute, Plaintiff respectfully refers the Court to Plaintiff's Local Rule 56.1

Counterstatement.

## <u>LEGAL STANDARD</u>

    "[S]ummary judgment on qualified immunity grounds is not appropriate when there are

facts in dispute that are material to a determination of reasonableness." *Kerman v. New York*, 261

F.3d 229, 240 (2d Cir. 2001). The Court shall grant summary judgment only if the moving party

shows there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law. Fed. R. Civ. P. 56(a). The burden is on the moving party to make this

demonstration. *Desir v. New York*, 453 Fed. Appx. 30 (2d Cir. 2011).

    "A 'genuine issue' exists where the evidence is such that a reasonable jury could decide

in the non-moving party's favor." *Cunningham v. N.Y. Dep't of Labor*, 429 Fed. Appx. 17 (2d

Cir. 2011). In other words, "[s]ummary is appropriate '[w]here the record taken as a whole could

not lead a rational trier of fact to find for the non-moving party." *Johnson v. Killian*, 680 F.3d

234, 236 (2d Cir. 2012) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986)).

In determining whether there are genuine issues of material fact, the Court is required to resolve all ambiguities and draw all reasonable factual inferences in favor of the party against whom summary judgment is sought. *Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003).

## ARGUMENT

### I.    The Fourth Amendment Requires Particularized Suspicion to Conduct a Strip Search of a Defendant Following a Traffic Arrest That Is Neither a Felony Nor a Misdemeanor

"A strip search is by its very nature a highly intrusive invasion." *Rivera v. United States*, 928 F.2d 592, 607 (2d. Cir. 1991). Strip searches must not be allowed to become commonplace in a society, such as ours, that values privacy and bodily integrity. *Hartline v. Gallo*, 546 F.3d 95, 102 (2d. Cir. 2008). Searches involving intrusions beyond the body's surface are limited to cases where the authorities possess "a clear indication that in fact [] evidence will be found." *Schmerber v. California*, 384 U.S. 757, 770 (1966).

The Fourth Amendment requires an individualized "reasonable suspicion that [a misdemeanor] arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest" before the arrestee may be lawfully subjected to a strip search. *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008) (citing *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986); *N.G. v. Connecticut*, 382 F.3d 225, 232 (2d Cir. 2004) (noting that all circuits to consider issue have reached similar conclusion)). In the current matter, this Court cited *Hartline* to support its view that "It is doubtful that these facts, even taken together, "could have led a reasonable officer in [Officers Benvenuto's and Tennariello's] position to suspect that [Minus] was illicitly concealing drugs on [his] person." *Minus v. Benvenuto*, No. 17-cv-4623-JMF, at 9 n.1 (S.D.N.Y., Dec. 3, 2019) (citing *Hartline*, 546 F.3d at 101).

4

## II.    There Exists a Clearly Established Right to Be Free From Strip Searches Following a Non-Felony Arrest Where There Is No Reasonable Suspicion of the Arrestee Concealing Contraband

This Court has already cast doubt on the authority for the justification for Defendants' strip search of Mr. Minus under the circumstances.[1] Defendants are entitled to summary judgment on qualified immunity grounds only when no reasonable jury, looking at the evidence in the light most favorable to and drawing all inferences most favorable to the plaintiffs, could conclude that it was objectively unreasonable for Defendants to believe they were acting in a fashion that did not clearly violate an established federally protected right. *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999). It is difficult to see how given the highly intrusive nature of the strip search, that no reasonable jury could reach this conclusion.

Mr. Minus had a clearly established Fourth Amendment right to be free from unwarranted bodily intrusion by the government. *Hartline*, 546 F.3d at 102 ("[A] misdemeanor arrestee may not be strip searched in the absence of individualized reasonable suspicion that she is secreting contraband."). Further, a reasonable trier of fact could conclude that it was objectively unreasonable for Defendants to strip search Mr. Minus following arrest not for a felony, or misdemeanor, but for a violation that had nothing to do with drugs and during which no contraband was found.

Under Second Circuit precedent the nature of the arrest, specifically that the strip search of Mr. Minus was conducted following arrest for a violation, is the most relevant factor in

---

[1] "Defendants also cite that Minus was on bail pending trial for a drug offense at the time, was driving late at night and failed to provide any means of verifying his claim that he was coming from work, and had an "extensive" history of drug convictions. Mem. 17. It is doubtful that these facts, even taken together, "could have led a reasonable officer in [Officers Benvenuto's and Tennariello's] position to suspect that [Minus] was illicitly concealing drugs on [his] person." *Hartline*, 546 F.3d at 101. And in any event, Defendants point to no evidence in the record that Officers Benvenuto and Tennariello were aware of these facts at the time that they conducted the strip search. *See, e.g.*, *Phaneuf v. Fraikin*, 448 F.3d 591, 597 (2d Cir. 2006) (holding that, in reviewing the propriety of a search, a court may consider "only those facts known to [the law enforcement officials] *prior* to the search" (citing cases))." *Minus v. Benvenuto*, No. 17-cv-4623-JMF, at 9 n.1 (S.D.N.Y., Dec. 3, 2019).

considering reasonableness. This Court has already pointed out that Defendants cite to no precedent granting qualified immunity in the context of a strip search for a violation. *Minus v. Benvenuto*, No. 17-cv-4623-JMF, at 9 (S.D.N.Y., Dec. 3, 2019). The cases cited by Defendants consistently reference the nature of arrest as the predominant factor to be considered. *E.g.*, *Gonzalez v. Schenectady*, 728 F. 3d 149, 158 (2d Cir. 2019) ("The key precedents turn kaleidoscopically on whether the arrest is for a felony or a misdemeanor, and whether the suspect is placed in the general prison population, among other considerations."). Defendants also cite to *Hartline v. Gallo* to assert that the constitutionality of a strip search turns on the "facts and circumstances" confronting a searching officer. Defendants' Memorandum of Law In Support of Their Motion for Summary Judgment on Qualified Immunity, 8 ("Def. Summary Judgment Motion"). What Defendants' brief omits is that the Second Circuit found that the facts and circumstances in *Hartline* did not warrant granting qualified immunity for officers that conducted a strip search following a misdemeanor drug offense following a traffic stop, let alone for a non-drug related violation arrest. The circumstances must support a specific finding that the arrestee was concealing drugs on his person, rather than general circumstantial association or criminal history involving drugs, which was reiterated in the cases cited by this Court. *See*, *e.g.*, *Ellsworth v. Wachtel*, 2013 WL 140342, at *5-7 (N.D.N.Y. 2013) (holding that individualized reasonable suspicion did not exist where the plaintiff had been arrested on a misdemeanor drug offense and was in the presence of narcotics at the time of her arrest); *Sims v. Farrelly*, 2013 WL 3972460, at *8 (S.D.N.Y. 2013) (holding, following a felony arrest, that individualized reasonable suspicion was absent where a strip search was conducted due "generally to the narcotics nature of the incident, the easy concealability of crack cocaine, and the criminal history of many of the subjects")). The Second Circuit in *Hartline* made the settled nature of law in the

6

context of misdemeanors abundantly clear. *See* 546 F. 3d at 102 (citing several Second Circuit precedents to support "that for more than twenty years this Court has held that a misdemeanor arrestee may not be strip searched in the absence of individualized reasonable suspicion that she is secreting contraband"). This legal context is critical for analyzing the reasonableness of any order to strip search an arrestee in a non-felony, non-misdemeanor setting.

### III.    Qualified Immunity Should Be Denied Where Defendants Were Ordered to Conduct an Unlawful Strip Search Pursuant to an Unlawful Order and with No Plausible Grounds for it to be Reasonable Under the Circumstances

"Acting under the advice or order of a superior does not *ipso facto* immunize officers from suit." *See Diamondstone v. Macaluso*, 148 F.3d 113, 126 (2d Cir. 1998) (denying qualified immunity to an officer who followed facially invalid orders from superiors which contradicted relevant court holdings). The Second Circuit has held a defendant's actions can be objectively unreasonable even if that defendant was following orders or a policy. *See Sorensen v. New York*, 42 F. App'x 507, 510–11 (2d Cir. 2002) (affirming denial of qualified immunity and rejecting defendants' argument "that they were simply low-level employees following orders and that it was objectively reasonable for them to believe that a policy promulgated by the City was constitutional . . . immunity has been granted [in such cases] only when the orders were facially valid").

Defendants previously argued that they were entitled to qualified immunity based on claims that the law in this Circuit is unsettled on whether individualized reasonable suspicion is required to justify a strip search at a police station, an argument which this Court rejected. *Minus v. Benvenuto*, No. 17-cv-4623-JMF, at 10 (S.D.N.Y., Dec. 3, 2019).

Since, Defendants have shifted to a different position on qualified immunity, that they were simply following orders. Defendants claim that there is "no evidence in the record that

would have given a reasonable officer in the defendants' position any credible, objective reason

to doubt the facially lawful direction of their superior officer." Def. Summary Judgment Motion,

8. Defendants claim that Lieutenant Rule "could have known of or observed any number of

"facts or circumstances" to support—or arguably support—a strip search," but Defendants

already previously claimed in their prior Local Rule 56.1 Statement what those facts and

circumstances were—Plaintiff's perceived criminal history, a proffered basis that was found to

be "meager" by this Court. *Id.* at 9; Defendants' First Local Rule 56.1 Statement, Shenkman

Decl., Ex. C; *Minus*, at 9. Defendants have since updated their Local Rule 56.1 Statement to

remove mention of Lieutenant Ian Rule's perception of Plaintiff as a "known drug dealer,"

instead concluding his determination was simply a "facially valid order" requiring deference.

Defendants' Local Rule 56.1 Statement, ¶ 4.

Defendants claim that the order was facially valid, notwithstanding that Plaintiff verbally

objected to the lawful basis of the strip search as a non-felony arrestee. Minus Dep., 58:19-21.

Shenkman Decl., Ex. A. Further, Plaintiff described that Defendants made light of the gravity of

the strip search they claimed was facially valid, smirking at him and, with Lieutenant Rule,

making gestures at Plaintiff with closed fists in open palms to make him feel threatened. Minus

Dep., 61:2-11, 62:5-16, 68:15-22, Shenkman Decl., Ex. A. Not all strip search orders are facially

valid; in *Sarnicola v. Westchester*, Judge McMahon denied a qualified immunity defense where a

superior officer ordered a strip search of an individual arrested for a *felony* narcotics violation.

229 F. Supp. 2d 259, 275 (S.D.N.Y. 2002) ("No officer of reasonable competence could have

thought that ordering a strip search without individualized reasonable suspicion was justified.").

The cases Defendants cite to defend 'following orders' generally involve orders

supported by supplemental justification that is either a) communicated by superiors, or b) plainly

apparent to the subordinate officers under the circumstances. In contrast, here the lack of

reasonable suspicion and circumstances of the arrest and suggested that both the strip search and

the order were unreasonable. *See Golphin v. New York*, 2011 WL 4375679, at *3 (S.D.N.Y.

2011) (noting, unlike here, that a subordinate officer was provided specific facts by superiors

"sufficient to support probable cause for the arrest"); *Anthony v. New York*, 339 F. 3d 129, 138

(2d Cir. 2003) (considering a qualified immunity challenge to a superior's order to seize an

individual following a 911 dispatch not merely on its face, but "in light of the substance of the

911 call and all of the surrounding circumstances known to [the subordinate officers]"). Here, a

reasonable officer would know that a strip search for a minor offense absent evidence of clear

suspicion is constitutionally suspect, and would have serious reason to doubt the validity of a

search in a non-felony context given firsthand knowledge that no contraband has been found. As

for the other cases Defendants cite, in *Lauro v. Charles*, the primary grounds of the Second

Circuit's reasoning in granting qualified immunity was the lack of clearly established law in

1995 relevant to the constitutionality of a "perp walk"; only passing reference was made in a

footnote to the officer's additional basis of following orders. 219 F.3d 202, 216 n.10 (2d Cir.

2003). Finally, *Zieper v. Metzinger* concerned a significantly more complex legal situation than

the facts here; federal agents had engaged in a novel operation to persuade a filmmaker to

remove a short film from a website, and as such the agents grappled with a nuanced First

Amendment line between "request" and "threaten or coerce" to comply with their superiors'

orders. 392 F. Supp. 2d 516, 538 (S.D.N.Y. 2005). In comparison, the framework limiting strip

searches in the non-felony context is straightforward.

  Defendants' one citation to a strip search case in this Circuit involving reliance on orders,

*Varrone*, does not squarely fit here because in that case, the basis for granting qualified

immunity to subordinate officers followed almost automatically from the fact that the co-defendant superior officer *was already found to be protected* by qualified immunity. *Varrone v. Bilotti*, 123 F.3d 75, 82 (2d Cir. 1997) (holding officers had qualified immunity when a strip search order was "issued by a superior officer who is protected by qualified immunity"). No similar determination has been made for Lieutenant Rule, who is not a party, and Defendants are hence not arguing that they are entitled to qualified immunity because Lt. Rule is. Further, the plaintiff in *Varrone* had not claimed the order itself was facially invalid or illegal, an issue that is certainly contested here. *Id.* at 81. Defendants point to no cases where a court in this jurisdiction found it was reasonable for subordinate officers to conduct an invasive strip search with no explanation or justification on the record, particularly after arrest for a mere violation.

Defendants claim that Lt. Rule's order was valid based on a conclusion that it was 'plausible.' Yet the cases on following orders involve more than blind reliance absent context. It is not clear that Defendants can articulate when an order ceases to be plausible. While determining that specific line is not at issue before the Court, it seems reasonable based on the existing precedent that, in a situation that presents unusually invasive circumstances, there must be some basis either inherent in the orders themselves or apparent under the circumstances to provide a legal basis. Plaintiff maintains that the order here was not plausible, against the backdrop of a search that already produced no contraband, and could not lead a reasonable officer to conclude that legal justification existed. *Anthony v. New York*, 339 F.3d 129, 138 (2d Cir. 2003) (citing cases).

Construing the ambiguity in the light most favorable to the non-moving party, Mr. Minus, there are material factual issues whereby a jury could infer that a reasonable officer who had personally conducted a vehicle search, and already found no contraband, would have reason to

10

seriously doubt the basis for a strip search order that required particularized reasonable suspicion. A jury could also infer that Lieutenant Rule possessed *no* additional facts or circumstances to justify a strip search, and that under the circumstances, a reasonable officer would know that an order to search under the circumstances was so without constitutional basis or precedent as to not be facially valid. There are further material factual ambiguities as to the scope of the information known to Defendants. Defendants claim there is no evidence in the record that they were aware of Lt. Rule's purported justification for the order. *Cf. Killmon v. Miami*, 199 F. App'x 796, 800 (11th Cir. 2006) (rejecting a 'following orders' defense where officers were with their superiors the entire time of an encounter and therefore shared the same knowledge and could not be viewed as blindly following orders). Defendants personally searched Plaintiff's vehicle and no contraband was reported; the record reflects no contraband was reported either on Plaintiff or in his vehicle at the time of arrest or later. Minus Dep., 34:18-21, 89:22-24, 90:15-21, Shenkman Decl., Ex. A; Spillane Memobook, Leese Decl., Ex. C. If Defendants were not provided additional information, their personal knowledge would tend to undermine the reasonableness of the order. But to the extent that there remains any ambiguity as to what Defendants knew of Lt. Rule's justification according to the record, those ambiguities must be resolved at this stage with the interpretation most favorable to Plaintiff. In the alternative, it is not inconceivable that a reasonable juror could infer that Lt. Rule even communicated the original constitutionally suspect basis for the search (regarding Plaintiff's criminal history and Lt. Rule's perception of Plaintiff as a drug dealer) to the other officers. Indeed, Lt. Rule's basis for the strip search which Defendants cited to previously, is not cited in any testimony from Lt. Rule himself, but in notes contemporaneously documented by Officer Spillane and submitted as evidence by Defendants, which state "Strip search conducted as per Lt.

11

Rule (prior info, known drug dealer, etc.)." Spillane Memobook, at 4, Leese Decl., Ex. C. Thus Lt. Rule had to at least have communicated with Officer Spillane, who Plaintiff testified was present over the course of the events at issue, and a reasonable juror could infer that Lt. Rule communicated that basis not only to her but also to others in the vicinity. Minus Dep., 58:9-14, Shenkman Decl., Ex. A.

Briefly reflecting on history, it is one of the oldest principles of our legal system that public officers are not shielded from civil liability for unconstitutional acts simply because they act on the direction of superiors. *See Little v. Barreme,* 6 U.S. 170 (1804) (captain of military ship not excused from civil liability for wrongful seizure of Danish vessel pursuant to orders of President of United States); *see also Guido v. Schenectady,* 404 F.2d 728, 743 n.11 (2d Cir. 1968) (discussing Chief Justice Marshall's opinion in *Barreme* and the Nuremberg trials for the proposition that "it is surely obvious to all that in the context of tort law the [superior orders] defense has absolutely no merit"); *Dugas v. Jefferson County,* 931 F. Supp. 1315, 1320 (E.D. Tex. 1996) ("A contrary rule could lead to abuse, uncertainty, and absurd results. Under a contrary rule, a prison guard could employ physical brutality and inflict serious injury upon orders of a superior yet escape liability. The law cannot so easily countenance such wrongful conduct. In short, the better and more just rule is that absent immunity all whose acts violate the constitution are liable."); Karen M. Blum, *Discretionary Function, Extraordinary Circumstances, and Other Nuances of the Qualified Immunity Doctrine Under Section 1983*, 23 TOURO L. REV. 57, 81 (2007) (citing cases across several jurisdictions to assert that "[o]verall, the courts are not big fans of the 'just following orders' defense").

12

## **CONCLUSION**

Granting qualified immunity for a strip search following a violation, as Defendants propose this Court do, would extend the doctrine well-beyond any limits the Second Circuit has before. Defendants should not enjoy immunity simply for following orders, when the circumstances they were personally involved in suggested there were no grounds to conduct the strip search. The decision whether to conduct an invasive strip search for a violation is not a particularly complex legal or factual issue. A reasonable officer should be presumed to know that it is generally unlawful absent particularized suspicion. The case at hand raises serious factual issues regarding the justification for the search and the orders received, that a reasonable juror could resolve in favor of Mr. Minus. Plaintiff therefore respectfully asks this Court to deny Defendants' motion for summary judgment on grounds of qualified immunity.

DATED: July 6, 2020
[New York, New York]

Respectfully submitted,

By: ____s/  Carey Shenkman
     LAW OFFICE OF CAREY
     SHENKMAN
     347 5th Ave. #1402
     New York, NY 10016
     carey@cshenkman.com
     (646) 598-6972

*Attorney for Plaintiff*

To:    Nelson R. Leese (by e-mail)
       Senior Counsel
       *Attorney for Defendants*
       nleese@law.nyc.gov

13